STEVENSON, J.
 

 Benjamin Sanders timely appeals his convictions for one count of first-degree felony murder and four counts of attempted armed robbery. We affirm.
 

 The testimony at trial reflects that Sanders and his codefendant, Rufus Young, were identified as the two armed gunmen who tried to rob a group of men socializing in a front yard in Broward County. Specifically, Sanders approached the group and demanded money, and when one man responded that he had no money, a struggle ensued, resulting in Sanders firing several shots, one hitting and killing Santos Salgado. Sanders was indicted by a grand jury with one count of first-degree felony murder for the killing of Salgado and four counts of attempted armed robbery as to four other men who were in the front yard. During police questioning, Sanders told Detective Berrena that he was with two other individuals on the evening of the crime, and he drove them to the neighborhood to commit the robbery, but he was neither a robber, nor the shooter. Sanders and Young were tried jointly using dual juries. Sanders’ jury returned a verdict of guilty as charged. The trial court sentenced him to life in prison for
 
 *153
 
 the felony murder count, to run concurrently with twenty years in prison for the armed robbery counts.
 

 Sanders raises four issues on appeal. First, we affirm without discussion the trial court's denial of Sanders’ motion to suppress his statements to Detective Berrena. Also, we affirm without discussion the trial court’s denial of Sanders’ motion for a new trial, alleging improper jury selection based on the trial court granting, over defense objection, the State’s challenge for cause as to a prospective juror with a hardship. Though we find no error and affirm Sanders’ judgment of conviction and sentence, we write to address the remaining two issues on appeal.
 

 Peremptory strikes
 

 In
 
 Melbourne v. State,
 
 679 So.2d 759 (Fla.1996), our supreme court set forth a three-part process for use when a peremptory strike is challenged. First, the objecting party must demonstrate that the prospective juror is a member of a distinct racial group and request the court ask the striking party the reason for its strike.
 
 Id.
 
 at 764. Then, the burden shifts to the proponent of the strike to come forward with a race-neutral explanation.
 
 Id.
 
 If the explanation is facially race-neutral, and the court believes that, given all of the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained.
 
 Id.
 
 This court reviews the trial court’s finding as to the genuineness of the proponent’s explanation for clear error.
 
 See Rodriguez v. State,
 
 753 So.2d 29, 41 (Fla.2000) (noting that because the validity of a peremptory strike rests on the trial court’s assessment of credibility, an appellate court should affirm unless the determination is clearly erroneous).
 

 During voir dire, the State used its eighth peremptory strike, out of ten, on prospective juror Wallace. Defense counsel objected, pointing out that Wallace was a member of a protected class. The State responded that it was excluding all prospective jurors who had been arrested previously, and Wallace, who was in his final year of college, had been arrested as an adolescent.
 
 See Smith v. State,
 
 799 So.2d 421, 424 (Fla. 5th DCA 2001) (“The fact that a prospective juror has been previously arrested or has a relative who has been is generally considered to be a valid race-neutral reason for the exercise of a peremptory challenge.”). The court pointed out that the State had not challenged prospective juror Ortiz who had been arrested twenty-five years ago. The State explained that Ortiz followed Wallace in the jury order, so it had not yet reached Ortiz but intended to challenge him as well. Defense counsel asserted that the State had not challenged prospective juror Curry from codefendant Young’s panel, who also had been arrested previously.
 
 [1]
 
 The State responded that Young’s panel should be kept entirely separate and also explained it had not noted that Curry had previously been arrested. The trial court observed other African-American jurors on the panel and permitted the State to use its eighth strike on Wallace.
 

 Then, as promised, the State used its ninth strike on Ortiz. The trial court announced that, as a result, Stanway, Dunn, and Klingshirn would be on the presumptive panel. The State used its tenth and final peremptory challenge on Stanway who had previously been arrested three years ago. As a result, Davis, who had never been arrested, was added to the panel. The State first requested an extra strike for Davis, but quickly changed its
 
 *154
 
 mind and decided to leave her on the panel. At this point, defense counsel re-objected to the State’s striking of Wallace, arguing that Klingshirn, a white male who had been arrested in 1994, remained on the panel. The defense accepted the panel subject to its objection as to Wallace.
 

 On appeal, Sanders contends that the State’s reason was pretextual in light of the fact that Curry and Klingshirn, who had both previously been arrested, sat on Sanders’ jury. We disagree. Although the State neglected to strike Curry, that mistake does not render the State’s strike of Wallace pretextual since the trial court accepted the State’s assertion that it had not noted that Curry had been previously arrested when it moved to peremptorily strike Wallace. We note that there was some confusion shown in the record during voir dire as two juries were being selected at the same time, and even defense counsel and the State were unsure as to whether Curry was on Sanders’ jury or his codefen-dant’s jury. As to Klingshirn, the State had exercised all ten of its peremptory challenges prior to Klingshirn’s placement on the panel, so this does not affect the genuineness of the State’s strike of Wallace. Thus, we find no reason on this record to reject the trial court’s finding that the strike of Wallace was genuine.
 

 Motion for Mistrial
 

 During trial, the State called a representative of Metro PCS, the cellular telephone company, to testify about Young’s phone records on the date of the crime. Using the call records, the State attempted to demonstrate that Young was in the vicinity of the crime at the time it occurred. On cross-examination, defense counsel for both Young and Sanders questioned the representative about the identities of the callers and the contents of voicemail messages. The representative explained that this information could have been obtained initially, but was no longer available because records were retained only for a specified length of time which had elapsed. On redirect, the State asked, “If the defense wants to know this information, they can give you a subpoena, can they not?” The defense attorneys simultaneously moved for a mistrial, alleging improper burden shifting. The trial court denied these motions.
 

 This court reviews an order denying a mistrial for an abuse of discretion.
 
 Veltre v. State,
 
 957 So.2d 47, 50 (Fla. 4th DCA),
 
 review denied,
 
 973 So.2d 1125 (Fla. 2007). “[T]he state cannot comment on a defendant’s failure to produce evidence to refute an element of the crime because doing so could erroneously lead the jury to believe that the defendant carried the burden of introducing evidence.”
 
 Hazelwood v. State,
 
 658 So.2d 1241, 1243 (Fla. 4th DCA 1995). However, in this case, the State’s question amounted to a fair reply to the defense attorneys’ line of questioning.
 
 See id.
 
 (holding that prosecutor’s comment in closing that defense counsel had the same subpoena power as the State was entirely appropriate where comment was made in response to defense’s argument that State had failed to call certain witnesses). We draw an analogy to
 
 Hazel-wood,
 
 and affirm the trial court’s denial of defense counsel’s motion for a mistrial, also noting that in the context of the trial, any error would have been harmless.
 

 Affirmed.
 

 GERBER, J., and BROWN, LUCY CHERNOW, Associate Judge, concur.
 

 [1]
 

 . The transcript reveals some confusion regarding Curry. Though defense counsel stated Curry was on Young's panel, Curry was actually always on Sanders’ panel.